**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UPSTATE NEW YORK ENGINEERS HEALTH**
**FUND, by Daniel P. Harrigan, as Administrator,**
**UPSTATE NEW YORK ENGINEERS PENSION**
**FUND, by Daniel P. Harrigan, as Administrator,**
**UPSTATE NEW YORK ENGINEERS S.U.B.**
**FUND, by Daniel P. Harrigan, as Administrator,**
**UPSTATE NEW YORK ENGINEERS TRAINING**
**FUND, by Theron Hogle and Eugene Hallock, as**
**Trustees, OPERATING ENGINEERS LOCAL 17**
**TRAINING FUND, by James Smolinski, as**
**Administrative Manager, CENTRAL PENSION**
**FUND OF THE INTERNATIONAL UNION OF**
**OPERATING ENGINEERS AND PARTICIPATING**
**EMPLOYERS, by Michael R. Fanning, as Chief**
**Executive Officer, INTERNATIONAL UNION OF**
**OPERATING ENGINEERS, LOCAL UNION NO.**
**17, by Norman Noon, as Business Manager,**
**INTERNATIONAL UNION OF OPERATING**
**ENGINEERS, LOCAL UNION NO. 463, by**
**Paul McCollum, as Business Manager,**

                              **Plaintiffs,**

    **vs.**                                          **5:14-CV-1539**
                                                **(MAD/TWD)**

**DIPIZIO CONSTRUCTION CO., INC.,**
**BERNARD DIPIZIO, individually and as an**
**Officer of DiPizio Construction Co., Inc.,**
**ROSANNE DIPIZIO, individually and as an**
**Officer of DiPizio Construction Co., Inc.,**

                              **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**BLITMAN, KING LAW FIRM**          **JENNIFER A. CLARK, ESQ.**
443 North Franklin Street Suite 300
Syracuse, New York 13204
Attorneys for Plaintiffs

**BARCLAY DAMON LLP**               **MICHAEL E. FERDMAN, ESQ.**
3 Fountain Plaza
1100 M&T Center

Buffalo, New York 14203
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On December 19, 2014, Plaintiffs Upstate New York Engineers Health Fund ("Health Fund"), Upstate New York Engineers Pension Fund ("Pension Fund"), Upstate New York Engineers S.U.B. Fund ("S.U.B. Fund"), Upstate New York Engineers Training Fund ("Training Fund"), Operating Engineers Local 17 Training Fund ("Operating Fund"), Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Central Fund") (collectively, the "Funds"), International Union of Operating Engineers, Local Union No. 17, and International Union of Operating Engineers, Local Union No. 463 (collectively, the "Unions") commenced this action against DiPizio Construction Co., Inc., Bernard DiPizio, and Rosanne DiPizio for failing to timely remit benefit contributions and deductions under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 1985. *See* Dkt. No. 1 at ¶¶ 1-2. Presently before the Court are Plaintiffs' motion for summary judgment and Defendants' cross-motion for leave to file an amended answer. *See* Dkt. Nos. 61, 63. As set forth below, the motion for summary judgment is granted in part and denied in part, and the motion for leave to file an amended answer is denied.

## II. BACKGROUND

Defendant DiPizio Construction is a New York corporation. *See* Dkt. No. 1 at ¶ 16. Plaintiffs allege that Bernard DiPizio is DiPizio Construction's president, and that Rosanne DiPizio is its vice president. *See id.* at ¶¶ 17-18. Plaintiffs are fiduciaries of the Funds and the

business managers of the Unions, and they bring this action alleging that DiPizio Construction failed to timely remit contributions and deductions owed to the Funds and the Unions. *See id.* at ¶¶ 7-14. When the complaint was filed on December 19, 2014, Plaintiffs alleged that DiPizio Construction owed $315,696.74 in fringe benefit contributions and deductions. *See id.* at ¶ 32. Based on two audits conducted after the complaint was filed and DiPizio Construction's remittance reports, Plaintiffs now claim that DiPizio Construction owed a total of $508,371.56 in contributions and deductions through February 2016. *See* Dkt. No. 61-57 at 8.[1] Of that amount, Defendants, Defendants' surety, and third parties had untimely paid $276,048.07 as of the time that the motion for summary judgment was filed. *See id.* Therefore, DiPizio Construction allegedly owes $232,323.49 in outstanding contributions and deductions.

According to Plaintiffs, DiPizio Construction is required to pay contributions and deductions to the Funds and the Unions because it is bound to collective bargaining agreements ("CBAs") with Local No. 17 and Local No. 463. *See id.* at ¶¶ 24-25. Defendants' obligations to the Funds arise from the CBAs, and the CBAs require DiPizio Construction to comply with the terms of the Funds' trust agreements. *See* Dkt. No. 61-57 at 3-4. Although the CBAs at issue were signed by the Unions and the Association of General Contractors Labor Relations Division ("AGC/LRD"), Plaintiffs allege that DiPizio Construction is nonetheless bound to those CBAs. *See id.* In their answer, Defendants admitted that DiPizio Construction is bound to the CBAs, *see* Dkt. No. 16 at ¶ 1, but Defendants now seek to amend their answer to assert that they were never bound to the CBAs between the AGC/LRD and the Unions, *see* Dkt. No. 63-1 at 3.

---

[1] Page numbers for docket entries in this Memorandum-Decision and Order refer to those assigned by the Court's electronic filing system ("ECF").

On December 15, 2016, Plaintiffs filed a motion for summary judgment seeking an award of unpaid deductions and contributions, as well as interest, liquidated damages, audit fees, and attorneys' fees and costs. *See* Dkt. No. 61-57 at 1. Defendants filed an opposition to the motion in which they argue—for the first time—that DiPizio Construction was never bound to the CBAs between the Unions and the AGC/LRD. *See* Dkt. No. 63-1 at 5. Defendants claim that DiPizio Construction withdrew bargaining authority from the AGC/LRD before it signed the CBA with Local No. 17, and that the AGC/LRD was never delegated as DiPizio Construction's bargaining agent with respect to Local No. 463. *See* Dkt. No. 63-1 at 5-6; Dkt. No. 64-4 at ¶ 12. In support of that claim, Defendants submit an affidavit from Rosanne DiPizio stating that while reviewing Plaintiffs' summary judgment motion, she was "reminded" that DiPizio Construction had withdrawn its designation of the AGC/LRD as a bargaining agent. *See* Dkt. No. 64-4 at ¶ 9. Defendants also submit a letter stating that "DiPizio Construction Company, Inc. hereby withdraws its' [sic] designation from the AGC/LRD, multi-employer bargaining unit as previously designated on 2/24/05 and 3/8/05." Dkt. No. 64-5 at 2. The letter is dated May 27, 2005, *see id.*, years before the AGC/LRD signed the 2009-2014 and 2014-2017 CBAs with Local No. 17, to which Plaintiffs claim DiPizio Construction is bound, *see* Dkt. Nos. 68-2, 68-3.

On the same day that Defendants responded to the summary judgment motion, Defendants also cross-moved to amend their answer in order to deny being bound to the CBAs. *See* Dkt. No. 63-1 at 4. Plaintiffs responded to Defendants' cross-motion to amend, arguing that even if Defendants withdrew AGC/LRD's bargaining authority, Defendants are still bound to the CBAs. *See* Dkt. No. 68.

### III. DISCUSSION

**A.    Standard of Review**

4

### *1. Summary Judgment*

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[S]ummary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment. Summary judgment may also be granted against any part of the remedy sought

by the opposing party's claims.  *See Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 307 (E.D.N.Y. 2010).

### 2. Motion to Amend

"A party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  District Courts have broad discretion to grant or deny an opportunity to amend.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Under Rule 15(a), a motion to amend a pleading should only be denied, "if there is an 'apparent or declared reason — such as undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'"  *Dluhos v. Floating and Abandoned Vessel Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (other citation omitted); *accord Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (citation omitted).  An amendment of a pleading is considered "futile" when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 468 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).

### B.    The Collective Bargaining Agreements

In their opposition to the motion for summary judgment and their motion to amend,[2] Defendants make three different arguments regarding the applicability of the CBAs signed by the

---

[2] Defendants submitted the same memorandum of law in support of both their opposition to the motion for summary judgment and their motion for leave to amend their answer.

AGC/LRD and the Unions.  First, Defendants argue that DiPizio Construction was never bound to the CBAs between the AGC/LRD and the Unions because the AGC/LRD lacked bargaining authority to bind DiPizio Construction to the CBAs.  *See* Dkt. No. 64 at 8-9.  Second, even if the Court finds that DiPizio Construction was bound to the CBAs, DiPizio Construction should not be required to remit contributions and deductions for work performed on certain jobs that Defendants claim were not covered by the terms of the CBA.  *See id.* at 9.  Third, Defendants argue that any dispute over the applicability of the CBAs is governed by the arbitration clauses contained in the CBAs; therefore, Plaintiffs' claims should be referred to arbitration.  *See id.* at 10.

### 1. Withdrawal of Bargaining Authority

In their complaint, Plaintiffs allege that "[a]t all times relevant herein, Defendant Corporation was bound to" both the 2009-2014 CBA with Local No. 17 and the 2012-2016 CBA with Local No. 463.  Dkt. No. 1 at ¶¶ 24-25.  In their May 22, 2015 answer, Defendants admitted those allegations.  *See* Dkt. No. 16 at ¶ 1.  Over a year and a half later—after the close of discovery and after the deadline for dispositive motions—Defendants now seek to amend their answer in order to deny those and other allegations.  Defendants now claim that DiPizio Construction was never bound to the CBAs with Local No. 17 because it withdrew bargaining authority from the AGC/LRD by letter dated May 27, 2005—years before the CBAs in question were signed.  Additionally, Defendants claim never to have designated bargaining authority to the AGC/LRD with respect to Local No. 463, and that they were therefore never bound to any CBAs between the AGC/LRD and Local No. 463.[3]  Plaintiffs argue that even if DiPizio Construction did

---

[3] In her affidavit, Rosanne DiPizio states that Defendants admitted to being bound to the CBA with Local No. 17 because they had forgotten that DiPizio Construction withdrew bargaining authority from the AGC/LRD in 2005.  *See* Dkt. No. 64-4 at ¶ 9.  As for Local No. 463, Defendants claim that DiPizio Construction never delegated bargaining authority to the AGC/LRD with respect to any CBA with Local No. 463.  But Defendants do not explain why

not delegate bargaining authority to the AGC/LRD, DiPizio Construction was still bound to the CBAs because it adopted the CBAs through its conduct.

Section 302(c)(5)(B) of the LMRA requires that payments to a trust fund be made pursuant to a "written agreement with the employer." 29 U.S.C. § 186(c)(5)(B). However, "[s]ection 302(c)(5)(B) does not require that an agreement be signed, only that it be 'written' and set forth 'a detailed basis on which . . . payments are to be made' to a trust fund. Accordingly, an unsigned, written agreement satisfies Section 302(c)(5)(B)'s 'written agreement' requirement." *Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (2d Cir. 1999) (quoting 29 U.S.C. § 186(c)(5)(B)); *see also Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004) ("We begin with the well-established principle '"that a collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound," . . . rather "all that is required is conduct manifesting an intention to be bound by the terms of an agreement."'") (quoting *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 373 (7th Cir. 1985)). Therefore, even if DiPizio Construction never signed the CBAs, it can still be bound to the terms of the CBAs.

Courts have looked to a number of factors in determining whether an employer's conduct "manifested an intent to adopt, or agree to, . . . unsigned CBAs." *Brown*, 194 F.3d at 355. Those factors include "payment of the wages on the union scale, paying pension and welfare contributions, submission of benefit reports, and accession to union audits." *New England Health Care Empls. Welfare Fund v. iCARE Mgmt., LLC*, 886 F. Supp. 2d 82, 100 (D. Conn. 2012) (citing *Brown*, 194 F.3d at 355). In *Brown*, the Second Circuit found that there was no issue of material fact as to whether an employer had adopted an unsigned CBA because the employer

---

they admitted to being bound to the CBA with Local No. 463 in their answer.

submitted monthly remittance reports, cooperated with an audit, paid union wages, and wrote a letter to the plaintiff funds acknowledging "responsibility to the funds." *Brown*, 194 F.3d at 354-55.

In this case, DiPizio Construction has similarly manifested its intent to be bound to the CBAs with Local No. 17 and Local No. 463. DiPizio Construction submitted to three separate audits, *see* Dkt. Nos. 61-42, 61-43,[4] submitted remittance reports, *see* Dkt. Nos. 61-35, 61-37, 61-38, and even paid a portion of the outstanding contributions and deductions after this action was filed, *see* Dkt. No. 65 at ¶¶ 23-24.[5] Additionally, DiPizio Construction signed multiple agreements evidencing their intent to be bound to the CBAs. DiPizio Construction signed memoranda of agreement with Local No. 463 in 2008 and 2012 modifying certain aspects of CBAs between the AGC/LRD and Local No. 463. *See* Dkt. No. 61-19 at 38; Dkt. No. 68-6 at 40. As for the CBA with Local No. 17, DiPizio Construction signed a similar memorandum of understanding on June 22, 2005—nearly a month after withdrawing bargaining authority from the AGC/LRD—modifying the CBA between the AGC/LRD and Local No. 17. *See* Dkt. No. 68-1. Finally, and perhaps most tellingly, Defendants admitted in their answer that DiPizio Construction was bound to the CBAs. *See* Dkt. No. 16 at ¶ 1. Although they now seek to amend their answer and assert that DiPizio Construction was never bound to the CBAs, Defendants were,

---

[4] Plaintiffs conducted three audits of DiPizio Construction's books and records. After the first audit in October 2014, Defendants objected to a portion of the audit allocating employee time to specific constructions projects. *See* Dkt. No. 61-41 at ¶ 9. Defendants requested that Plaintiffs re-audit DiPizio Construction's books and records making certain changes. *See id.* The second audit was conducted in July 2015, and a third audit was conducted in February 2016. *See* Dkt. Nos. 61-42, 61-43.

[5] In their response to Plaintiffs' statement of material facts, Defendants concede that they made those payments, but they contend that the payments were voluntary and maintain that they are not bound to the CBAs. *See* Dkt. No. 65 at ¶¶ 23-24.

at the very least, under the impression that DiPizio Construction was bound to the CBAs when Defendants filed their answer. According to the evidence before the Court, DiPizio Construction has, at all times prior to Defendants' opposition to the motion for summary judgment, operated as though it were bound to the CBAs.

Because there is no genuine issue of material fact as to whether DiPizio Construction adopted the CBAs with the Unions, Defendants' motion to amend their answer in order to deny being bound to the CBAs is denied as futile.

### 2. "Heavy" and "Highway" Jobs

Defendants argue that, even if DiPizio Construction was bound to the CBAs, certain jobs were not covered by the 2014-2017 CBA between Local No. 17 and the AGC/LRD, which contains the following language: "This agreement shall apply to Heavy and Highway construction and building site work but shall not apply to the actual building, foundations, structural portion and interiors of buildings that are normally covered by Building agreements in the geographical area of this agreement." *See* Dkt. No. 63-1 at 7; Dkt. No. 68-3 at 6.

According to Defendants, some portion of the work performed after the complaint was filed was not heavy, highway, or building site work; instead, it was building work that is not covered by the CBA with Local No. 17. *See* Dkt. No. 64 at 9-10. Defendants identify four particular projects or categories of projects that they argue are not subject to the CBA: "Clearview," "Gabes," "Small Jobs: Misc.," and "Shop." *See* Dkt. No. 63-5 at ¶¶ 28-29. But Defendants provide no documentary evidence indicating the nature of the work that was done on those jobs. They simply attach an affidavit from Rosanne DiPizio stating in conclusory terms that the work was not covered by the CBA. *See id.*

In reply, Plaintiffs provide extensive evidence contradicting Defendants' claim. *See* Dkt. No. 68. First, Plaintiffs provide affidavits from four different members of Local No. 17 who claim to have worked on the jobs or categories of jobs in question. *See* Dkt. Nos. 68-12, 68-13, 68-14, 68-15. Each affidavit states that the union members were paid union wages and that they were never given any indication that they would not receive their full employee benefits package. *See id.* Furthermore, the affidavits actually describe the work that was performed and, in every instance, it was the type of work that is covered by the CBA. *See id.* Second, according to Local No. 17's business manager, DiPizio Construction deducted union dues from the employees' wages in accordance with the CBA. *See* Dkt. No. 68 at ¶ 22. Third, Plaintiffs provide an application for a highway work permit signed by Bernard DiPizio that describes the work that DiPizio Construction proposed to do on the Gabe job. *See* Dkt. No. 68-11 at 12. The categories of proposed work were "pavement," "storm drainage and grading," and "erosion and sedimentation control." *Id.* Based on the description of the work included in the application, it appears that the work done on the Gabe job was covered by the CBA.

Rosanne DiPizio's brief, conclusory statement is not sufficient to create an issue of fact as to whether the jobs in question were covered by the CBAs. *See McKenzie Eng'g Co. v. N.L.R.B.*, 182 F.3d 622, 626 (8th Cir. 1999) (holding that there was no issue of fact as to whether a specific job was covered under a "Highway and Heavy" provision where the employer deducted union dues pursuant to the CBA and its president made a statement implying that the work was covered by the CBA).

### 3. Arbitration

The 2014-2017 CBA between Union Local No. 17 and the AGC/LRD establishes procedures for arbitrating disputes between an employer and the union. *See* Dkt. No. 68-3 at 4.

Under the CBA, disputes over "the interpretation, application or meaning of any provision" of the CBA may be referred to arbitration. *See id.* In light of that language, Defendants argue that any dispute over the applicability of the CBA to certain types of jobs—including whether the jobs identified by Defendants fall into the categories of highway, heavy, or building site work—must be decided by an arbitrator, not a federal court. *See* Dkt. No. 63-1 at 10.

When a labor agreement contains an arbitration clause, there is a presumption in favor of arbitration. *See Local 8A-28A Welfare & 401(K) Retirement Funds v. Millard Grp., Inc.*, No. 03-CV-8672, 2004 WL 305729, *2 (S.D.N.Y. Feb. 18, 2004) (citing *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 578 (1960)). However, the presumption of arbitrability applies only to the parties to the agreement, not to third party beneficiaries of the agreement, such as employee benefit funds. *See MI Installers & Furniture Serv., Inc. v. N.Y.C. Dist. Council of Carpenters Pension Fund*, 476 F. Supp. 2d 387, 391 (S.D.N.Y. 2007); *see also Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 372 (1984) ("[T]he presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between a union and the employer apply to disputes between trustees and employers."). Because the Funds are seeking to recover unpaid contributions from DiPizio Construction for the jobs in question, the presumption of arbitrability does not apply. The question, then, is whether the CBA evidences an intent to arbitrate disputes between an employer and employee benefit funds.

There is no provision in the CBA addressing arbitration of disputes between employers and employee benefit funds. Instead, the section of the CBA dealing with arbitration mentions only the employer and the union. *See* Dkt. No. 68-3 at 6. In similar cases, courts in this circuit have found "the plain language of these provisions to limit the mandatory arbitration requirement to the parties explicitly referenced in the agreement: the Employer and the Union." *Dodge*

*Hyundai of Paramus v. United Welfare Fund, Welfare Div.*, No. 11-CV-979, 2011 WL 4356373, *4 (E.D.N.Y. Sept. 16, 2011); *accord MI Installers*, 476 F. Supp. 2d at 392.  Defendants' two sentence argument in favor of arbitration provides no evidence of an agreement that benefit funds should be required to arbitrate disputes over unpaid contributions.  Therefore, the Court rejects Defendants' argument that the dispute over the applicability of the CBA requires arbitration.

## C.    DiPizio Construction Company

Plaintiffs allege that DiPizio construction is liable for failure to make contributions and deductions to the Funds and the Unions as required by ERISA and the LMRA.  Under ERISA, an employer that is required to make contributions to a multiemployer benefit plan "must make such contributions in accordance with the terms and conditions of such plan or [collectively bargained] agreement."  29 U.S.C. § 1145.  Similarly, the LMRA "provides a federal cause of action for '[s]uits for violation of contracts between an employer and a labor organization.'" *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016) (quoting 29 U.S.C. § 185(a)).  Here, the facts establish that DiPizio Construction was bound by the CBAs requiring it to make contributions and deductions, and that it failed to do so.

"Ordinarily, claims for damages must be established in an evidentiary proceeding at which a defendant is afforded an opportunity to contest the amount claimed." *Annuity, Pension, Welfare & Training Funds of the In'l Union of Operating Eng'rs, Local 14 14B, AFL CIO v. Superior Site Work, Inc.*, No. 15-CV-543, 2017 WL 639248, *4 (E.D.N.Y. Feb. 16, 2017).  However, an evidentiary hearing is not required if the court can make a determination of damages based on detailed affidavits and documentary evidence submitted by the plaintiff.  *See id.*  In this case, Plaintiffs provide extensive documentation—including audits, remittance reports, and numerous affidavits—detailing DiPizio Construction's delinquent contributions and deductions to the Funds

and the Unions.  Defendants, on the other hand, have not provided any evidence contesting

Plaintiffs' calculations of unpaid contributions, deductions, interest, or liquidated damages.

Although Defendants challenge the applicability of the CBAs to DiPizio Construction, their

opposition to the motion for summary judgment does not challenge the calculation of damages

provided by Plaintiffs.  Therefore, the Court will determine damages based on the affidavits and

documentary evidence submitted by Plaintiffs.

 The civil enforcement provision of ERISA provides that

> [i]n any action under this subchapter by a fiduciary for or on behalf
> of a plan to enforce section 1145 of this title in which a judgment in
> favor of the plan is awarded, the court shall award the plan–
>
>  (A) the unpaid contributions,
>
>  (B) interest on the unpaid contributions,
>
>  (C) an amount equal to the greater of–
>
>   (i) interest on the unpaid contributions, or
>
>   (ii) liquidated damages provided for under the plan
> in an amount not in excess of 20 percent (or such higher percentage as may be
> permitted under Federal or State law) of the amount determined by the court under
> subparagraph (A),
>
>  (D) reasonable attorney's fees and costs of the action, to be
> paid by the defendant, and
>
>  (E) such other legal or equitable relief as the court deems
> appropriate.

29 U.S.C. § 1132(g)(2).  Here, Plaintiffs seek contributions, deductions, interest, liquidated

damages, audit fees, and attorneys' fees and costs.  *See* Dkt. No. 61-57 at 4.

### 1. Contributions and Deductions

 According to a July 8, 2015 audit, DiPizio Construction owed $265,959.69 in

contributions and deductions for the period of February 1, 2011 through July 31, 2014.  *See* Dkt.

14

No. 61-45 at ¶ 8.  After this action was filed, DiPizio's surety, Travelers Casualty and Surety Company of America ("Travelers"), untimely paid $199,741.16 of the outstanding contributions and deductions.  *See id.* at ¶ 9.  Additionally, DiPizio Construction untimely paid another $13,750.47 of the overdue contributions and deductions identified in the July 8, 2015 audit, leaving a balance of $52,468.06 for the period of February 1, 2011 through July 31, 2014.  *See id.* at ¶ 10.  Plaintiffs conducted the second audit of DiPizio Construction's records on February 7, 2016.  *See* Dkt. No. 61-43.  According to that audit, DiPizio Construction owed an additional $209,679.00 in contributions and deductions for the period of August 2014 through December 2015.  *See* Dkt. No. 61-45 at ¶ 14.  A third party paid $37,291.64 of those outstanding contributions and deductions, which left a balance of $172,387.36 for the period of August 2014 through December 2015.  *See id.* at ¶ 16.  Finally, remittance reports submitted by DiPizio Construction show that it owed an additional $7,468.07 in contributions and deductions for January and February 2016.  *See id.* at ¶ 17.

Therefore, Plaintiffs claim that DiPizio Construction owes a total of $232,323.49 in outstanding contributions and deductions.  After reviewing all of the affidavits and supporting documentation, the Court concludes that, with one minor exception, Plaintiffs' calculations accurately reflect the amount that is due, and the Court awards Plaintiffs $232,271.14 in outstanding contributions and deductions.[6]

---

[6] Plaintiffs submit an affidavit from Paul McCollum, who is the business manager of Local No. 463, a trustee of the Training Fund, and a trustee of the Construction Industry Research and Service Trust Fund ("C.I.R.S.T. Fund").  In the affidavit, McCollum states that Defendants owe $53.35 to the C.I.R.S.T. Fund, *see* Dkt. No. 61-16 at ¶ 24; unpaid contributions to the C.I.R.S.T. Fund are also included in Plaintiffs' audits, *see* Dkt. Nos. 42, 43.  However, the C.I.R.S.T. Fund is not a plaintiff in this case, and Plaintiffs provide no explanation for why the C.I.R.S.T. Fund is entitled to recover unpaid contributions.  Therefore, the Court subtracts the $53.35 owed to the C.I.R.S.T. Fund from the total amount of outstanding contributions and deductions owed by DiPizio Construction.

### 2. Interest

Plaintiffs seek interest on unpaid and untimely paid contributions and deductions.  For the purposes of an action to collect interest on unpaid contributions under ERISA, "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."  29 U.S.C. § 1132(g)(2).  "Under the LMRA, it is within the court's discretion to award prejudgment interest."  *Finkel v. INS Elec. Servs. Inc.*, No. 06-CV-4862, 2008 WL 941482, *7 (E.D.N.Y. Apr. 4, 2008).  The Funds' trust agreements provide for interest at the following rates: twenty-four percent for the Upstate New York Engineers Training, Health, Pension, and S.U.B. funds, *see* Dkt. No. 61-28 at ¶ 11; nine percent for the Central Fund, *see* Dkt. No. 61-21 at ¶ 7; and the Operating Fund provides for interest at the rate prescribed by ERISA, *see* Dkt. No. 61-13 at ¶ 7.[7]  The Local No. 17 and Local No. 463 CBAs do not specify a rate of interest to be paid on delinquent deductions due to the Unions; therefore, Plaintiffs chose to apply the New York state statutory rate of nine percent as set forth by the New York Civil Practice Law and Rules § 5004.  *See* Dkt. No. 61-16 at ¶ 19; Dkt. No. 61-24 at ¶ 15.

Based on the above rates, Plaintiffs request $171,075.53 in interest on unpaid contributions and deductions through January 1, 2017.  *See* Dkt. No. 61-57 at 7.  After reviewing Plaintiffs' calculations, *see* Dkt. Nos. 47, 48, 49, 50, 51, the Court finds that they accurately reflect the amount of interest owed by DiPizio Construction.

### 3. Liquidated Damages

---

[7] The interest rate prescribed by ERISA is the federal short-term interest rate plus three percentage points.  *See* 26 U.S.C. § 6621(1).

Plaintiffs request liquidated damages on unpaid and untimely paid contributions in the amount of $185,333.54.  *See* Dkt. No. 61-57 at 7.  ERISA provides for liquidated damages in an "amount equal to the greater of--(i) interest on the unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C).  After reviewing Plaintiffs' calculation of liquidated damages, the Court was not able to determine how Plaintiffs arrived at some of the figures laid out in their spreadsheets.  Specifically, there are several instances where Plaintiffs assess liquidated damages on unpaid contributions that are greater than twenty percent of the unpaid contributions and also greater than the interest on the unpaid contributions; such amounts are not compatible with ERISA's liquidated damages provision.  *See* Dkt. No. 61-47 at 5, 15, 19; Dkt. No. 61-49 at 4. Therefore, the Court will instead award Plaintiffs an amount equal to the interest on unpaid contributions as laid out in Plaintiffs' spreadsheets, which is $171,508.46.[8]  *See* Dkt. Nos. 47, 49, 50.

### 4. Late Contributions and Deductions Paid Before the Filing of this Action

Plaintiffs also seek interest and liquidated damages as a result of contributions that were untimely paid prior to the filing of the present action.  *See* Dkt. No. 61-57 at 10.  "ERISA does not permit damages for contributions paid prior to filing suit, even when those contributions were untimely paid."  *Finkel v. Allstar Elec. Corp.*, No. 11-CV-3222, 2013 WL 4806951, *8 (E.D.N.Y. Sept. 9, 2013) (citing *Iron Workers Dist. Council of W.N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995)).  The Court

---

[8] This amount is greater than the outstanding interest on unpaid contributions because Defendants, Travelers, and third parties have already paid a percentage of the interest that is due on unpaid contributions.  The appropriate amount of liquidated damages is the total interest on unpaid contributions before those payments were made.

may, however, award interest and liquidated damages under the LMRA, which "provides a statutory basis for enforcing the contractual terms of the CBA." *Gesualdi v. Loriann Trucking Co., Inc.*, No. 11-CV-5984, 2012 WL 3887205, *7 (E.D.N.Y. July 27, 2012).

Here, Plaintiffs are entitled to interest and liquidated damages under the Funds' trusts and collections policies when an employer breaches the terms of the CBAs. *See* Dkt. No. 61-28 at ¶¶ 11-12; Dkt. No. 61-21 at ¶¶ 7-8. Defendants untimely paid $15,974.14 to Plaintiffs for the period of July 2014 through September 2014, and under the Funds' trusts and collections policies Defendants owe $84.79 in interest and $2,220.96 in liquidated damages on those late payments. *See* Dkt. No. 61-45 at ¶¶ 18-19. Therefore, DiPizio Construction owes a total of $2,305.75 in interest and liquidated damages on untimely payments made prior to the filing of the complaint.

### 5. Audit Fees

"Requests for audit fees are 'generally determined by utilizing the same standards the court applies in awarding attorneys' fees.'" *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (quoting *King v. Unique Rigging Corp.*, No. 01-CV-3797, 2006 WL 3335011, *5 (E.D.N.Y. Oct. 27, 2006)). Accordingly, a party requesting audit fees must provide sufficient information to allow a court to determine the reasonableness of the fees requested. Several courts in this circuit have denied audit fees in ERISA actions where the plaintiffs have failed to provide detailed records of the work that was performed by auditors. *See Upstate N.Y. Eng'rs Health Fund v. Oneidaview Pile Driving, Inc.*, No. 5:15-CV-512, 2017 WL 1483446, *4 (N.D.N.Y. Apr. 25, 2017) (denying audit fees where the plaintiffs provided an invoice from their auditor stating the number of hours worked without specifying what work was performed); *Eng'rs Joint Welfare Fund v. C. Destro Dev. Co., Inc.*, 178

F. Supp. 3d 27, 36 (N.D.N.Y. 2016) (same); *Dahill Moving & Storage Co.*, 545 F. Supp. 2d at 269 (same).

In this case, Plaintiffs request $22,395.84 in audit fees. *See* Dkt. No. 61-41 at ¶ 19. To support that request, Plaintiffs provide an affidavit from their auditor and a series of invoices from his auditing firm. *See* Dkt. No. 61-44. But the invoices list only the date, the number of hours worked, and the title "DiPizio Construction"; they say nothing about the specifics of the work that was performed. *See id.* Therefore, the Court is not able to determine whether the audit fees Plaintiffs request are reasonable, and Plaintiffs' request for audit fees is denied.

### 6. Attorneys' Fees and Costs

In an ERISA action involving delinquent contributions, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "[A] district court must begin its § 1132(g)(1) analysis by determining whether a party has achieved 'some degree of success on the merits,' but it is not required to award fees simply because this pre-condition has been met." *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 110 (2d Cir. 2011) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 500 U.S. 242, 254 (2010)). Here, Plaintiffs have achieved success on the merits, and the Court finds that an award of attorneys' fees is appropriate.

In this case, Plaintiffs request $64,290.70 in attorneys' fees and $3,586.00 in costs. *See* Dkt. No. 61-2 at ¶ 24. To support their request, Plaintiffs have submitted a detailed narrative of legal services listing the date, attorney or paralegal, time spent, and the nature of the work completed. *See* Dkt. No. 61-12. After reviewing the time records, the Court finds that the amount of time spent by Plaintiffs' attorneys was reasonable. However, the Court finds that

Plaintiffs' requested hourly rates of $282-$300 for attorneys and $154-$165 for paralegals are too high.

In determining the reasonableness of attorneys' fees rates, the Second Circuit has held that the court is "to bear in mind all of the case-specific variables that [the courts] have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," which is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The relevant factors for the Court to consider include the complexity and difficulty of the case, the resources required for effective prosecution of the case, the case's timing demands, the attorney's interest in achieving the ends of the litigation, the nature of representation, and the type of work involved in the case. *See id.* at 184 n.2.

In similar actions to recover unpaid contributions under ERISA, this Court has found that rates of $210 per hour for experienced attorneys and $80 per hour for paralegals are appropriate. *See I.B.E.W. Local 910 Welfare, Annuity & Pension Funds v. Grayco Elec., Inc.*, No. 7:12-CV-652, 2013 WL 495638, *4 (N.D.N.Y. Feb. 7, 2013); *Upstate N.Y. Eng'rs Health Fund ex rel. Harrigan v. Ransom*, No. 5:13-CV-1434, 2015 WL 145441, *5 (N.D.N.Y. Jan. 12, 2015). Other courts in the Northern District have awarded fees at the same rates in ERISA cases. *E.g. Upstate N.Y. Eng'rs Health Fund v. FMC Demolition, Inc.*, No. 5:13-CV-1307, 2015 WL 401113, *7 (N.D.N.Y. Jan. 28, 2015). The Court awards those same rates in this case. Therefore, the Court awards Plaintiffs $42,567 in attorneys' fees, consisting of $35,847 for attorney work and $6,720 for paralegal work. Additionally, the Court has reviewed Plaintiffs' request for $3,586 in costs and finds it reasonable.

**D.    Individual Liability**

Plaintiffs also claim that Rosanne and Bernard DiPizio are personally liable for a portion of DiPizio Construction's unpaid contributions. *See* Dkt. No. 61-57 at 17. Under ERISA, in order to establish that an individual is personally liable for unpaid contributions as a fiduciary, a plaintiff must show that "(1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009).

First, "[w]hile unpaid employer contributions are not ordinarily assets of the plan, the parties to an agreement are free to provide otherwise." *Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-0884, 2009 WL 3497493, *3 (E.D.N.Y. Oct. 28, 2009) (citing *In re Halpern*, 566 F.3d at 290-91) (citations omitted). In this case, the trust agreements for the Health, Pension, S.U.B., and Training funds provide that withheld contributions are considered plan assets. *See* Dkt. No. 61-16 at ¶ 14; Dkt. No. 61-28 at ¶ 18. However, Plaintiffs do not provide evidence that the trust agreements of the Operating Fund or the Central Fund classify unpaid contributions as plan assets; therefore, Bernard and Rosanne Dipizio are not liable for unpaid contributions to those funds.

Second, Plaintiffs claim that both Bernard and Rosanne DiPizio exercised sufficient control over the assets to be liable as fiduciaries. *See* Dkt. No. 61-57 at 16. "In determining whether an individual is personally liable as a fiduciary, courts analyze how much control the individual exercised over [plan] assets. In making this determination, courts look to several factors, 'most significantly, whether a defendant was responsible for authorizing and making payments to an employee benefits plan.'" *Sullivan v. M.A.C. Design Corp.*, No. 14-CV-1846, 2015 WL 5518456, *3 (E.D.N.Y. Sept. 17 2015) (alteration in the original) (quoting *Trs. of Sheet Metal Workers Int'l Assoc. Local No. 38 Vacation Fund v. Katonah Roofing, Inc.*, Nos. 10-CV-

1619, 11-CV-8185, 2011 WL 9010113, *6 (S.D.N.Y. Sept. 4, 2011)).  Although Defendants concede that Bernard DiPizio, as President and founder of DiPizio Construction, had decision making power and control over assets, they claim that Rosanne DiPizio was not a fiduciary.  *See* Dkt. No. 64 at 8.

### 1. Bernard DiPizio

For the reasons stated above, Bernard DiPizio is liable as an ERISA fiduciary for unpaid contributions to the Health, Pension, S.U.B., and Training funds.  Therefore, Plaintiffs are entitled to unpaid contributions, prejudgment interest, and attorneys' fees and costs from Bernard DiPizio.

According to Plaintiffs, DiPizio Construction owes $35,428.10 in unpaid contributions to the Health, Pension, and S.U.B. funds for the period of February 1, 2011 through July 31, 2014, *see* Dkt. No. 61-28 at ¶ 24; it owes $116,022.55 to those same funds for the period of August 1, 2014 through December 31, 2015, *see id.* at ¶ 33; and it owes an additional $5,123.00 for January and February 2016, *see id.* at ¶ 33.  Plaintiffs also provide evidence that DiPizio Construction owes $304.94 in unpaid contributions to the Training fund.  *See* Dkt. No. 61-16 at ¶ 24.  Therefore, Bernard DiPizio is liable for a total amount of $156,878.59 in unpaid contributions.

In addition to unpaid contributions, prejudgment interest may also constitute appropriate relief against a fiduciary under 29 U.S.C. § 1109(a).  *See Moulton Masonry*, 779 F.3d at 190.  The decision whether to grant prejudgment interest is in the discretion of the district court, and the court must "explain and articulate its reasons for any decision regarding prejudgment interest." *Id.* (quoting *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 622-23 (2d Cir. 2006)). "Prejudgment interest is intended to serve 'as compensation for the use of money withheld' and to put 'the plan in the position it would have occupied but for the breach.'" *Oneidaview Pile Driving*, 2017 WL 1483446, at *5 (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270,

286 (2d Cir. 1992)).  "Assessing the appropriate amount of interest requires a comparison of what the plan earned during the time in question and what it would have earned had the money lost due to the breach been available."  *Diduck*, 974 F.2d at 286.

Here, based on the consolidated annual rates of return for the Health, Pension, S.U.B., and Training funds, Plaintiffs claim that those funds have lost $10,422.64 in investment income as a result of unpaid and untimely paid contributions.  *See* Dkt. No. 61-16 at ¶ 30; Dkt. No. 61-28 at ¶¶ 43-44.  After carefully reviewing Plaintiffs' records, the Court finds that an award of $10,422.64 in prejudgment interest against Bernard DiPizio is appropriate to compensate Plaintiffs for the use of the withheld contributions.  As Plaintiffs are the prevailing party and have established Bernard DiPizio's liability, he is also liable for the $46,153 in attorneys' fees and costs awarded to Plaintiffs.

### 2. Rosanne DiPizio

In order to show that Rosanne DiPizio has the requisite control over plan assets to be considered an ERISA fiduciary, Plaintiffs cite to a series of requests for admissions that were served on Defendants.  *See* Dkt. No. 61-2 at ¶¶ 8-11.  Plaintiffs served Defendants with the first request for admissions on July 8, 2015, and it included the following: "On and after November 2012, Defendant [Rosanne] DiPizio determined how much money would be paid to the Plaintiffs in satisfaction of the obligations of Defendant DiPizio Construction Co. under the Collective Bargaining Agreements."  Dkt. No. 61-4 at 7.  The first request for admissions also contained other factual assertions that, if admitted, clearly establish that Rosanne DiPizio was an ERISA fiduciary.  *See id.* at 5-7.  Defendants never responded to any of Plaintiffs' requests for admissions.  *See* Dkt. No. 61-2 at ¶¶ 8-11.

Under Federal Rule of Procedure 36, if a party fails to respond to a request for admissions within thirty days, then any matter set forth in the request for admissions is deemed admitted. *See* Fed. R. Civ. P. 36(a)(3). A fact deemed admitted is considered "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). In a motion to withdraw an admission, the withdrawing party must satisfy two requirements: "(1) presentation of the merits of the action must be subserved, and (2) the party who obtained the admission must not be prejudiced by the withdrawal." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). But the rule is permissive, meaning that "even if a party satisfies the two criteria described by the rule, the decision whether to permit withdrawal remains within the sound discretion of the court." *Ng v. HSBC Mortg. Corp.*, No. 07-CV-5434, 2011 WL 3511296, *4 (E.D.N.Y. Aug. 10, 2011) (citing *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir. 1983)).

Here, Defendants have not made a motion to withdraw their admissions in accordance with Rule 36. On August 13, 2015, over thirty days after serving Defendants with the first request for admissions, Plaintiffs explained that Defendants' failure to respond would result in the facts set forth being deemed admitted by the Court. *See* Dkt. No. 61-4 at 14. Despite that warning, Defendants did not respond to the request for admissions or move for the Court to withdraw any admissions resulting from their failure to respond. Instead, Defendants simply contradicted those admissions in their opposition to Plaintiffs' motion for summary judgment without even addressing their failure to respond to the request for admissions. Defendants argued that Rosanne DiPizio is not an ERISA fiduciary because she was not an officer of DiPizio Construction and was not involved in making decisions about the business. *See* Dkt. No. 63-1 at 11. In support of that argument, Defendants provide affidavits from Rosanne and Bernard

DiPizio, both of whom state in conclusory terms that Rosanne DiPizio did not have decision making authority at DiPizio Construction. *See* Dkt. No. 64-4 at ¶ 31; Dkt. No. 64-12 at ¶¶ 2, 4.

"Although an admission should ordinarily be binding on the party who made it, there must be room in rare cases for a different result, as when an admission no longer is true because of changed circumstances or through honest error a party has made an improvident admission." *Ng*, 2011 WL 3511296, at *5 (quoting 8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2264 (3d ed. 2011)). This is not such a case. Defendants have been on notice for nearly a year and a half of Plaintiffs' intention to rely on Defendants' admissions. Defendants nevertheless failed to make a motion to withdraw their admissions under Federal Rule of Civil Procedure 36, and they do not even address the evidentiary issue in their opposition to the motion for summary judgment. *See J & J Sports Prods., Inc. v. Mari*, No. 10-CV-455, 2012 WL 1004842, *1 (E.D.N.Y. Mar. 23, 2012) (deeming admitted all of the statements contained in a request for admissions when the admitting party failed to respond and also failed to address the evidentiary issue in his opposition to the motion for summary judgment); *accord Ng*, 2011 WL 3511296, at *5.

The Court finds that—based on the information contained in Plaintiffs' first request for admissions—Rosanne DiPizio had sufficient control over DiPizio Construction's decision making to be considered an ERISA fiduciary. Therefore, Rosanne DiPizio is liable for unpaid contributions to the Health, Pension, S.U.B., and Training funds in the amount of $156,878.59. For the same reasons set forth in regard to Bernard DiPizio, Rosanne DiPizio is also liable for $10,422.64 in prejudgment interest and $46,153 in attorneys' fees and costs.

**F.    Injunctive Relief**

Plaintiffs argue that Defendants must be compelled to produce their books and records for Plaintiffs' review and audit. "Faced with recalcitrant ERISA defendants, numerous courts have granted an injunction requiring an employer, who both failed to make contributions and cooperate with an audit, to submit to a CBA-required audit covering a specific period of time." *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, *14 (E.D.N.Y. Aug. 30, 2011) (collecting cases). Here, the Funds' collections policies and trust agreements provide that Defendants are required to produce their books and records for Plaintiffs' examination and audit. *See* Dkt. No. 61-28 at ¶ 17; Dkt. No. 61-22 at 14; Dkt. No. 61-16 at ¶ 20. Plaintiffs claim that DiPizio Construction has refused to produce its records for audit for the period beginning in January 2016. *See* Dkt. No. 61-57 at 26. Accordingly, the Court concludes that Plaintiffs are entitled to examine Defendants' books and records for the time period of January 2016 to date.

Plaintiffs also seek a permanent injunction restraining Defendants from breaching the CBAs and directing Defendants to perform their obligations to Plaintiffs under the CBAs, including to submit timely the required monthly remittance reports and contributions and deductions to Plaintiffs. *See* Dkt. No. 61-57 at 24-26. Injunctive relief is available to Plaintiffs under ERISA. *See* 29 U.S.C. § 1132(g)(2)(E); *see also Beck v. Levering*, 947 F.2d 639, 641 (2d Cir. 1991) (holding that permanent injunctions are available as a remedy under ERISA in certain circumstances involving self-dealing by plan fiduciaries). However, the permanent injunction that Plaintiffs seek would do nothing to alter the parties' respective rights or obligations, as it would merely require Defendants to comply with obligations Defendants are already legally required to comply with. Accordingly, Plaintiffs' request for a permanent injunction fails to establish irreparable harm. *See Gesualdi v. Mack Excavation & Trailer Serv., Inc.*, No. CV 09-

2502, 2010 WL 985269, *11 (E.D.N.Y. Feb. 12, 2010) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)).  Therefore, the Court denies Plaintiffs' request for a permanent injunction.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' cross-motion for leave to file an amended answer (Dkt. No. 63) is **DENIED**; and the Court further

**ORDERS** that Plaintiffs' motion for summary judgment (Dkt. No. 61) is **DENIED in part** as to the requested permanent injunction, and **GRANTED in part** as to an audit of DiPizio Construction's books and records from January 2016 to date, as well as to unpaid contributions and deductions, interest, liquidated damages, and attorneys' fees and costs; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the amount of $623,313.88 against DiPizio Construction, consisting of (1) $232,271.14 in unpaid contributions and deductions, (2) $171,075.53 in interest on unpaid contributions and deductions, (3) $171,508.46 in liquidated damages, (4) $2,305.75 in interest and liquidated damages on contributions untimely paid before the complaint was filed, and (5) $46,153 in attorneys' fees and costs; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the amount of $213,454.23 against Rosanne and Bernard DiPizio, consisting of (1) $156,878.59 in unpaid contributions, (2) $10,422.64 in prejudgment interest, and (3) $46,153 in attorneys' fees and costs; and the Court further

**ORDERS** that Defendants are required to produce DiPizio Construction's books and records for the period from January 2016 to date for Plaintiffs' review and audit, and that the

Court shall retain jurisdiction in this matter until Plaintiffs complete their audit of DiPizio

Construction's books and records; and the Court further

**ORDERS** that within **thirty (30) days** of the completion of the audit, Plaintiffs shall

move for entry of judgment against Defendants for any and all contributions and deductions that

are determined to be due as a result of the audit, plus the applicable interest thereon, liquidated

damages, audit costs, and attorneys' fees and costs; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiffs' favor; and the

Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 14, 2017
      Albany, New York

Mae A. D'Agostino
U.S. District Judge